UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KING SOL OM ON SEKHEMRE EL NETER,<br><br>    Petitioner,<br><br>v.<br><br>ALEX VILLANUEVA, Sheriff,<br><br>    Respondent. | Case No. 2:20-cv-00542-JFW-JDE<br><br>ORDER TO SHOW CAUSE WHY THE FIRST AMENDED PETITION SHOULD NOT BE DISMISSED |

## I.
## BACKGROUND

On January 17, 2020, the Court received a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, purportedly on behalf of King Sol Om On Sekhemre El Neter ("Petitioner"). Dkt. 1 ("Petition" or "Pet."). Petitioner separately filed a document entitled "Additional Ground" which purports to assert a fifth ground. Dkt. 3 ("Supp. Pet."). On January 24, 2020, the Court issued an Order to Show Cause (addressing only the Petitioner) and an Amended Order to Show Cause (addressing both the Petitioner and the later-docketed Supp. Pet.) why the Petition should not be dismissed.

Four days after the Orders to Show Cause were entered onto the docket, a First Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 8, "FAP") by Petitioner was entered on the docket, although it was apparently received by the Clerk's Office on January 23, 2020. The FAP is slightly but substantively different from the original Petition and Pet. Supp. Because of those differences, the Court interprets Petitioner's submission of the FAP as an application for leave to file an amended petition. So interpreted, the Court grants the request and the FAP shall be the operative Petition.

On the FAP form, Petitioner did not check boxes indicating he was in custody as a pretrial detainee or having been sentenced; instead, Petitioner checked "other" and explained "under threat duress and coercion of an involuntary commitment to a state hospital." FAP at 1 (CM/ECF pagination is used herein to page references in the Petition). He further asserts the sole challenge raised by the FAP is to "the validity of lawful jurisdiction" and states "I am challenging the decision of an involuntary commitment to a state hospital with the intention to administer aggressive ant-psychotic medication involuntarily" in underlying state case number TA14709201. Id. at 2. According to other allegations in the FAP and state court records available electronically,[1] Petitioner is a pretrial detainee at Twin Towers Correctional Facility ("Twin Towers") on state criminal charges in Los Angeles County Superior Court Case No. TA147092, with "further proceedings" having taken place as recently as January 16, 2020. FAP at 1, 6; Los Angeles County

---

[1] Courts may take judicial notice of the existence of court filings and another court's orders. See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of opinion and briefs filed in another proceeding); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citation omitted)).

Superior Court ("Superior Court Website") at www.lacourt.org. The FAP asserts constitutional violations arising from Petitioner's arrest, detention, and the conditions of his confinement in four grounds. FAP at 4-7.

A habeas petition brought under 28 U.S.C. § 2241 is subject to the same screening requirements that apply to habeas petitions brought under 28 U.S.C. § 2254. See Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Habeas Rule 1(b) (providing that district courts may apply the Habeas Rules to habeas petitions that are not brought under 28 U.S.C. § 2254). Accordingly, a district court "must promptly examine" the petition and, "[i]f it plainly appears from the petition . . . that the petitioner is not entitled to relief," the "judge must dismiss the petition." Habeas Rule 4; Mayle v. Felix, 545 U.S. 644, 656 (2005).

The Court has reviewed the FAP under Rule 4 of the Habeas Rules and finds it is subject to dismissal for the reasons explained below.

## II.
## PETITIONER'S CLAIMS

1. Petitioner is "unlawfully restrained as a foreigner to the State of California 'Diversity of Citizenship' (28 USCA 1332) 13th Amend." FAP at 4. In support, Petitioner alleges that the "complaint" by Plaintiff against Defendant, which the Court interprets to refer to the underlying state criminal action, names "merely a fictitious party whom no cause of action can be validly alleged"; there is no "legitimate proof" that "Petitioner is a contractor in the State of California"; and the "state proceedings are being undertaken in bad faith with intentions to harass and trespass on the Petitioner[']s estate when there is no valid commitment, an invalid plea was procured by fraud after . . . [a] special appearance to challenge jurisdiction. Id.

2. "Petitioner's [First] Amendment, Right to Privacy, Freedom of Choice, Free Exercise, and Faith and Healing Exemption is invaded by an invalid civil commitment." FAP at 5. In support, Petitioner alleges jurisdiction is lacking for his detention as he does not have a mental health disorder and is not a danger to himself of others and, as a foreign national, is entitled to "faith healing exemption without interruption or the invasion of privacy rights." Id.

3. Petitioner's "unlawful detention is a result of a repetitive 'breach of due process' though a defective pleading and procedural requirements." FAP at 6. In support, Petitioner alleges that after his Fifth Amendment due process rights were violated by an unlawful seizure, "a continuing breach became a pattern" due to coercion during the booking process and his "invalid commitment" to a state hospital stemming from a void indictment procured by fraud. Id. Petitioner further claims that at his arraignment, he filed a demurrer while overcoming an attempt by a bailiff to swindle him, part of a court conspiracy against him. Id. Petitioner further claims he entered an involuntary plea to charges unsupported by a probable cause determination and was denied a timely preliminary hearing. Id.

4. "Petitioner is falsely imprisoned as a result of a malicious arrest without probable cause by deadly force (unlawful seizure 4th Am.)." FAP at 7. In support, Petitioner references various "reports" regarding investigations of "the malicious arrest by way of deadly force" and testimony at "the preliminary hearing" regarding the use of a taser ten time upon Petitioner, five times with a "dry stun." Id.

5. "Petitioner was denied the right to an impartial jury, adequate or self-representation, and the means to prepare and present an affirmative defense (6th Amendment) Speedy Trial Act (1974). FAP at 9. In support, Petitioner seeks "to have a jury present during the incompetency hearing" and a "criminal suspension" of a public defender who alleged has a conflict of interest. Id. Petitioner also states he has been incarcerated for 17 months, 10 of

4

which in "criminal suspension," which constitute extraordinary circumstances and have caused irreparable injury, including loss of law books, exculpatory evidence and private foreign documents. Id. at 10.

### III.

### DISCUSSION

**A.     The Court Must Abstain from Interfering with Petitioner's Ongoing State Prosecution**

Many of Petitioner's claims challenge aspects of his ongoing state criminal proceedings. The FAP challenges whether there was probable cause for Petitioner's arrest on the pending charges, whether excessive force was used during his arrest (which would potentially implicate the charges against him for assault with a deadly weapon or by means likely to produce great bodily injury upon the person of a peace officer or firefighter in violation of Cal. Penal Code § 245(c), see Superior Court Website), whether he received appropriate due process protections in ongoing state criminal proceedings, a state court mental competency determination, and an apparent determination to commit Petitioner to a State hospital to administer anti-psychotic medication, although Petitioner states that he still resides at Men's Central Jail in Los Angeles. To the extent Petitioner challenges ongoing state criminal proceedings, the Court must abstain from hearing such challenges.

"Only a limited number of pre-trial challenges have been found cognizable under Section 2241. Generally, pre-trial habeas challenges have been allowed only when a state defendant contends he is being deprived of his right to a speedy trial or the Double Jeopardy Clause will be violated if he is tried." Fritz v. Cty. of Los Angeles CA, 2012 WL 5197971, at *2 (C.D. Cal. Oct. 18, 2012) (citing Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 488-93 (1973)); McNeely v. Blanas, 336 F.3d 822, 824 n.1 (9th Cir. 2003) (as amended). However, as the Supreme Court has explained, "federal habeas

corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." Braden, 410 U.S. at 489.

Principles of comity and federalism require federal courts to abstain from intervening in pending state criminal proceedings absent extraordinary circumstances. See Younger v. Harris, 401 U.S. 37, 43-54 (1971). Younger abstention applies to both attempts to preclude and/or stay criminal prosecutions and attempts to obtain more limited or piecemeal intervention in state criminal actions. See, e.g., Kugler v. Helfant, 421 U.S. 117, 130 (1975) (explaining that Supreme Court precedent establishes that "at least in the absence of 'extraordinary circumstances' federal courts must refuse to intervene in state criminal proceedings to suppress the use of evidence claimed to have been obtained through unlawful means"); Dubinka v. Judges of the Superior Court of Cal. for the Cty. of L.A., 23 F.3d 218, 223-26 (9th Cir. 1994) (concluding that a request to enjoin enforcement of a criminal discovery statute and to suppress evidence obtained under that statute could not be entertained). Abstention principles generally require federal courts to abstain from exercising jurisdiction over a habeas petition in which the petitioner raises an affirmative defense to a state prosecution unless (1) the state proceedings are being undertaken in bad faith or to harass, where there is no "hope of obtaining a valid conviction," or (2) "in other extraordinary circumstances where irreparable injury can be shown." Brown v. Ahern, 676 F.3d 899, 903 (9th Cir. 2012) (citation omitted); see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435-37 (1982). Irreparable injury alone, however, is insufficient to warrant federal intervention unless the irreparable injury is both great and immediate. See Younger, 401 U.S. at 46.

In this case, abstention appears appropriate because all the Younger abstention requirements are met. As noted, Petitioner's state criminal

proceedings are ongoing. Petitioner is in pretrial custody on the criminal charges for which he is detained. Second the state's task of enforcing its laws against socially harmful conduct is "important and necessary," Younger, 401 U.S. at 51-52, and as such, the state proceedings implicate important state interests. Third, Petitioner has an adequate opportunity to raise his federal habeas claims in his pending state proceedings. Finally, there is nothing to indicate the circumstances of Petitioner's case fall within any recognized exception to the Younger doctrine.

To the extent Petitioner asserts his speedy trial argument creates an "extraordinary circumstance," the Ninth Circuit has explained that a claimed violation of the Speedy Trial Clause in and of itself is not an independent "extraordinary circumstance" necessitating pre-trial habeas consideration. Brown, 676 F.3d at 901. "[A]bsent specifically defined extraordinary circumstances, principles of federalism and comity prohibit a federal district court from entertaining a pre-conviction habeas petition that raises a Speedy Trial claim as an affirmative defense to state prosecution." Id. at 900. In Braden, the petitioner sought habeas relief, claiming a denial of his constitutional right to a speedy trial and requesting an order directing the respondent to afford him an immediate trial on his then three-year old Kentucky indictment. 410 U.S. at 486. The Supreme Court held that the petitioner was entitled to raise his speedy trial claim at that time because: (1) he was in custody within the meaning of 28 U.S.C. § 2241; (2) he exhausted all available state remedies; and (3) he did not seek to litigate a defense to a criminal charge, but instead, sought a prompt trial. Id. at 488-90. Under these limited circumstances, no "legitimate interest of federalism" was jeopardized by allowing the petitioner to seek Section 2241 relief. Id. at 492. The Supreme Court emphasized, however, that nothing in its decision "would permit the derailment of a pending state proceeding by an attempt to litigate

constitutional defenses prematurely in federal court." Id. at 493. Here, unlike the petitioner in Braden, Petitioner has not exhausted his state remedies, as discussed further below, and, in challenging the constitutionality of the superior court's jurisdiction, does seek to litigate a defense to the criminal charge. Thus, here, a claim of a speedy trial violation alone does not appear to constitute an extraordinary circumstance.

Although there is no statutory exhaustion requirement for Section 2241 actions, federal courts have imposed a prudential exhaustion requirement. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity" and is "not limited to challenges to the validity of state court convictions." Preiser v. Rodriguez, 411 U.S. 475, 491 (1973). Here, it appears Petitioner has not sought any relief in the California Court of Appeal or California Supreme Court. See FAP at 3-4 (identifying only "appeals" or grievances sent to the ALCU, this Court, and the State Bar of California). Given Petitioner's failure to seek any relief in the state courts, considerations of comity and federalism preclude Petitioner from proceeding to federal court without first exhausting his claims in state court. See Fritz, 2012 WL 5197971, at *4 ("Federalism and comity concerns preclude Petitioner's attempt to proceed in federal court without first affording the state courts the opportunity to consider his claims and provide any relief that is appropriate.").

Thus, Younger abstention is appropriate to the extent the FAP challenges an aspect of Petitioner's underlying state criminal proceedings. When Younger applies, and the petitioner seeks injunctive relief, as the FAP does here by challenging "lawful jurisdiction" of the state court, the Court has no discretion to grant such relief. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 816 n.22 (1976); Garrison v. California, 2018 WL 2106488, at *2 (N.D. Cal. May 7, 2018).

**B.  Petitioner's Civil Rights Claims Should Be Dismissed**

The remaining claims in the FAP (and to the extent the excessive force claim does not challenge Petitioner's underlying criminal proceedings) do not fall within "the core of habeas corpus," and as such, they are properly raised, if at all, in a civil rights action, not a habeas petition.

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus and a civil rights complaint. See Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam). Challenges to the validity of any confinement or to particulars affecting its duration fall within the "core" of habeas corpus. Hill v. McDonough, 547 U.S. 573, 579 (2006); Nelson v. Campbell, 541 U.S. 637, 643 (2004). "By contrast, constitutional claims that merely challenge the conditions of prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." Nelson, 541 U.S. at 643; Hill, 547 U.S. at 579; Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) (concluding that "a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus"). Thus, if success on a habeas petitioner's claim would not necessarily lead to his immediate or earlier release from confinement, the claim does not fall within "the core of habeas corpus" and thus, must be pursued, if at all, under 42 U.S.C. § 1983. Nettles, 830 F.3d at 935 (citing Skinner v. Switzer, 562 U.S. 521, 535 n.13 (2011)); see also Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003).

Here, although it is not entirely clear, it appears Petitioner's claims regarding the denial of his First Amendment rights, right to privacy, freedom of choice, free exercise, and "faith healing exemption" all relate to the conditions of his confinement. Success on these claims would not result in an immediate or speedier release from custody, despite the relief being sought in

the Petition. See Nettles, 830 F.3d at 933 (explaining that "prisoners may not challenge mere conditions of confinement in habeas corpus"); Shook v. Apker, 472 F. App'x 702, 702-03 (9th Cir. 2012) (finding claims on conditions of confinement were properly brought in a civil rights action despite the relief sought); Stephens v. Cty. of San Bernardino, 2019 WL 1412123, at *1 (C.D. Cal. Feb. 20, 2019) (concluding that conditions of confinement claims must be brought in Section 1983 action regardless of the petitioner's request for release from custody), Report and Recommendation accepted by 2019 WL 1406954 (C.D. Cal. Mar. 27, 2019); Crane v. Beard, 2017 WL 1234096, at *4 (C.D. Cal. Apr. 3, 2017) (finding that claims challenging the petitioner's conditions of confinement were not cognizable on federal habeas review). As such, these claims do not fall within "the core of habeas corpus" and Petitioner must instead pursue these claims, if at all, in a Section 1983 action.

**C.     Converting the FAP into a Civil Rights Complaint is Not Warranted**

The Court recognizes that there are some circumstances in which it may be appropriate for a district court to convert a non-cognizable habeas petition into a civil rights complaint under 42 U.S.C. § 1983. See Nettles, 830 F.3d at 935-36 (involving a 28 U.S.C. § 2254 petition). However, the Court finds that this action is not amenable for such conversion for a number of reasons. First, simultaneously proceeding with habeas and civil rights claims in a single action likely is improper. See Malone v. Calderon, 165 F.3d 1234, 1236-37 (9th Cir. 1999) (declining to consolidate federal habeas and civil rights actions, stating that "the risk of confusion of the issues inherent in consolidation of the habeas and civil rights cases weighs against consolidation"). Here, the civil rights claims relate to conditions of, and Petitioner's treatment in, county jail, while his potential habeas claims appear to relate to his ongoing state criminal proceedings. The Court determines that proceeding in a single action with both sets of claims is not warranted. See McGowan v. Hendrick, 2014 WL 791802,

at *3 (C.D. Cal. Feb. 19, 2014) (declining to convert habeas petition into civil rights action where operative pleading contained both civil rights and habeas claims). Second, prisoner civil rights actions are subject to different requirements (and higher filing fees) than are federal habeas proceedings. The petition must be amenable to conversion "on its face," that is, it must name the correct defendants and seek the correct relief. See Nettles, 830 F.3d at 936. As noted, Petitioner would not be entitled to the relief sought based on the allegations regarding his conditions of confinement. See Stephens, 2019 WL 1412123, at *1 (explaining that an appropriate remedy on claims relating to the conditions of confinement would be in the form of damages or a change in conditions, not release). Further, the FAP names only the Sheriff Alex Villanueva as the respondent. It is unclear whether the Sheriff would be the appropriate defendant in a civil rights action based on the allegations in the Petition. Third, as pled, Petitioner's claims potentially would be subject to dismissal for failure to state a claim upon which relief may be granted, which could subject him to a "strike" under 28 U.S.C. § 1915(g).

## IV.

## ORDER

Because the Court must abstain from hearing any habeas claims challenging Petitioner's ongoing state criminal proceedings and should decline to consider Petitioner's civil rights claims in this action, it appears that the FAP is subject to dismissal. It also appears, for the reasons set forth above, that leave to amend is not warranted. See, e.g., Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment."); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (holding that there was no need to prolong litigation by permitting amendment where the "basic flaw" in the pleading could not be cured).

11

Petitioner is therefore ORDERED TO SHOW CAUSE why this action should not be dismissed without prejudice by filing a written response <u>by no later than thirty (30) days from the date of this Order</u> which sets forth any valid legal and/or factual reasons why the FAP should not be dismissed.

Instead of filing a written response to the matters addressed in this Order, Petitioner may voluntarily dismiss the action by filing a Notice of Dismissal under Federal Rule of Civil Procedure 41(a)(1). <u>The Clerk is directed to send Petitioner a Central District Request for Dismissal form</u>.

**The Court warns Petitioner that failure to timely file a response to this Order will result in a recommendation that this action be dismissed without prejudice for the reasons explained above, and for failure to prosecute and comply with Court orders.** <u>See</u> Fed. R. Civ. P. 41(b).

Dated: January 28, 2020

_____
JOHN D. EARLY
United States Magistrate Judge